**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| IN RE MINOR FAMILY HOTELS, LLC, ET AL., *Debtor.* | CASE NO. 3:10-MC-00052 |
| MINOR FAMILY HOTELS, LLC, ET AL., *Plaintiffs*, v. HOTEL CHARLOTTESVILLE, LLC, ET AL., *Defendants*. | BANKR. ADV. NO. 10-06108 |
| CLANCY & THEYS CONSTRUCTION CO., *Plaintiff and Counter Defendant*, v. MINOR FAMILY HOTELS, LLC, *Defendant and Counter Claimant.* | BANKR. ADV. NO. 10-06109 |
| SPECIALTY FINANCE GROUP LLC, *Plaintiff and Counter Defendant*, v. MINOR FAMILY HOTELS, LLC, AND HALSEY MINOR, *Defendants, Counter and Third Party Plaintiffs,* v. HOTEL CHARLOTTESVILLE, LLC AND LEE DANIELSON, *Third Party Defendants*. | BANKR. ADV. NO. 10-06112 |
| CLANCY & THEYS CONSTRUCTION COMPANY, *Plaintiff and Counter Defendant*, v. HOTEL CHARLOTTESVILLE, LLC, ET AL., *Defendants*. | BANKR. ADV. NO. 10-06118  ORDER  JUDGE NORMAN K. MOON |

This matter is before the Court upon consideration of the Motion to Withdraw the Reference filed by Chapter 11 debtor and defendant Minor Family Hotels, LLC ("Debtor") and Halsey Minor (collectively "Owners") on November 4, 2010 (docket no. 1). Owners seek withdrawal of three adversary proceedings, entitled: *Minor Family Hotels, LLC v. Hotel Charlottesville, LLC*, Adv. No. 10-06108 (action for breach of contract and fraud initially filed in the Circuit Court for the City of Charlottesville in the Commonwealth of Virginia) ("Virginia Lead Action"); *Specialty Finance Group, LLC v. Minor Family Hotels, LLC*, Adv. No. 10-06112 (action for breach of contract and fraud initially filed in the State Court of Fulton County, Georgia) ("Georgia Action"); and *Clancy & Theys Construction Co. v. Minor Family Hotels, LLC*, Adv. No. 10-06109 (action for foreclosure of mechanic's liens initially filed in the Circuit Court for the City of Charlottesville in the Commonwealth of Virginia) ("Virginia Lien Action"). This matter involves many of the same issues as an appeal filed by Owners in this Court (designated 3:10-cv-00062) of an order of the United States Bankruptcy Court of the Western District of Virginia, Lynchburg Division ("Bankruptcy Court") entered on October 1, 2010, remanding the Georgia Action to the State Court of Fulton County, Georgia ("Georgia State Court"). In the Order and the Memorandum Opinion disposing of the appeal, I held that the Bankruptcy Court did not abuse its discretion in remanding the Georgia Action to Georgia State Court.

Oral argument and decision in this matter have been expedited as requested by Owners in an Emergency Motion filed in the appeal in order to avoid delaying the Georgia State Court's hearing on pending motions for summary judgment scheduled for December 14, 2010. For the reasons stated below, Owners' Motion to Withdraw the Reference is denied.

# I. BACKGROUND

As I recited in the Memorandum Opinion disposing of the appeal, this dispute arises out of a construction loan agreement for a $23.6 million loan entered into by lender and plaintiff Specialty Finance Group, LLC ("Lender") and by Debtor for the purpose of funding the construction and development of a hotel on the downtown mall in Charlottesville, Virginia. Lender alleges that because events of default occurred, it rightfully accelerated all amounts due under the loan and guaranty and sought those amounts from Owners. Owners allege that Lender wrongfully failed to fund the loan and illegally colluded with Hotel Charlottesville, LLC ("Developer"), Lee Danielson, and Clancy & Theys Construction Company ("General Contractor").

The first legal proceeding to spawn from this dispute, the Virginia Lead Action, was filed by Owners in February 2009 in the Circuit Court for the City of Charlottesville in the Commonwealth of Virginia ("Virginia State Court") against Developer and Danielson for breach of contract and fraud.[1] Lender then initiated an action in Georgia State Court, asserting claims against Owners for breach of the loan agreement and guaranty. Owners counterclaimed in the Georgia Action for breach of the loan agreement and fraud.[2] Shortly thereafter, Lender was added as a defendant in the Virginia Lead Action. A third proceeding, the Virginia Lien Action, was filed by General Contractor in June 2009 in Virginia State Court against Debtor and Lender for the foreclosure of mechanic's liens recorded against the hotel construction project. In the Virginia Lien Action, Debtor counterclaimed against General Contractor for breach of contract. Subcontractors subsequently brought separate actions to foreclose on mechanic's liens.

---

[1] Owners alleged breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud in the inducement, fraud, and constructive fraud.
[2] Owners alleged the same claims they alleged in the Virginia Lead Action: breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, fraud in the inducement, fraud, and constructive fraud.

Debtor filed a Chapter 11 bankruptcy petition in the Bankruptcy Court in September, 2010, and then both actions pending in Virginia State Court were removed to the Bankruptcy Court.³ The Georgia Action was removed to the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, which transferred the proceeding to the Bankruptcy Court in the Western District of Virginia. On the same day that the Georgia Action was transferred to the Bankruptcy Court, Owners moved to consolidate the three proceedings before the Bankruptcy Court, and Lender moved to remand the Georgia Action to Georgia State Court. The Bankruptcy Court granted the motion to remand the Georgia Action, and took the motion to consolidate under advisement until resolution of the Georgia Action. Owners filed a notice of appeal of the decision to remand the Georgia Action. Then Owners brought the instant action, seeking withdrawal of the reference of the three adversary proceedings and consolidation of those proceedings for one trial in this Court.

## II. APPLICABLE LAW

Pursuant to 28 U.S.C. § 157(d), a district court may withdraw, in whole or in part, any bankruptcy case or proceeding "for cause shown." To determine whether cause has been shown, a court looks to several factors, including:

> (i) whether the proceeding is core or non-core, (ii) the uniform administration of bankruptcy proceedings, (iii) expediting the bankruptcy process and promoting judicial economy, (iv) the efficient use of debtors' and creditors' resources, (v) the reduction of forum shopping, and (vi) the preservation of the right to a jury trial.

*Fed. Ins. Co. v. Parnell (In re Peanut Corp. of Am.)*, 407 B.R. 862, 865 (W.D. Va. 2009). The burden of demonstrating grounds for withdrawal is on the movant. *Id.* at 864.

---

³ The separate subcontractors' actions were later consolidated with the Virginia Lien Action.

Federal Rule of Civil Procedure 42(a) permits a court to consolidate actions or join for hearing or trial issues in the actions where the actions before the court "involve a common question of law or fact." The purpose of consolidation for trial is to avoid the burden separate trials would create for the parties, the witnesses, and the court. *See Arroyo v. Chardon*, 90 F.R.D. 603, 605 (D.P.R. 1981). In determining whether to order joint trials, the court must balance the judicial economy in avoiding separate trials against any risk of prejudice to the parties and confusion of the issues that consolidation may create. *Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982). In short, if a jury is likely to be confused or overwhelmed by a joint trial, and consolidation would not significantly save time or expenses, consolidation for trial is not appropriate. *See Arroyo*, 90 F.R.D. at 606.

### III. DISCUSSION

Even though by separate order I affirmed the Bankruptcy Court's remand of the Georgia Action to Georgia State Court, I will consider whether the Georgia Action, as well as the Virginia Lead Action and Virginia Lien Action, should be withdrawn from the Bankruptcy Court and consolidated in this Court.[4]

I begin with the first factor: whether the proceedings are core or non-core. Although bankruptcy courts may enter final judgments and orders in core proceedings, 28 U.S.C. § 157(b)(1), they are not permitted to do so in non-core proceedings unless the proceedings are related to the bankruptcy case and all of the parties consent to the bankruptcy court's jurisdiction, 28 U.S.C. § 157(c).[5] Without the consent of all of the parties in non-core proceedings,

---

[4] I do not need to address, and do not decide in this opinion, whether—had I concluded that "cause" had been shown to withdraw the reference of the Georgia Action—I would have authority to do so after having affirmed the remand order.

[5] A non-core proceeding is related to a bankruptcy case where the outcome of the non-core proceeding "could conceivably have any effect on the estate being administered in bankruptcy." *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007) (emphasis deleted). "Although there may be situations in which an extremely tenuous connection to the estate would not justify the existence of jurisdiction, 'related to' jurisdiction is

5

bankruptcy courts must submit proposed findings of fact and conclusions of law to the district court, where they are subject to de novo review. 28 U.S.C. § 157(c); *see also Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 399 (4th Cir. 1992). It follows that, in general, it is a more efficient use of the parties' and court's resources to withdraw the reference from the bankruptcy court where the proceedings are non-core. *See In re Peanut Corp. of Am.*, 407 B.R. at 866. In 28 U.S.C. § 157(b)(2), Congress set forth a non-exhaustive list of examples of core proceedings. In general, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Peanut Corp. of Am.*, 407 B.R. at 865. "[A]ny proceeding dependent on bankruptcy for its existence is a core bankruptcy proceeding." *Id.* (quoting *C.F. Trust, Inc. v. Tyler (In re Peterson)*, 318 B.R. 795, 803 (E.D. Va. 2004)). A non-core proceeding, by contrast, does not depend on bankruptcy law for its existence and "could proceed in another court." *Id.* (quoting *Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997)).

Generally, it is the duty of the bankruptcy judge to determine whether a cause of action is a core proceeding. 28 U.S.C. § 157(b)(3). In considering whether to remand the Georgia Action, the Bankruptcy Court held that the Georgia Action is a non-core proceeding because "the causes of action arise under state law," not title 11, and the "action was filed originally in state court." *See Specialty Fin. Group, LLC v. Minor Family Hotels, LLC (In re Minor Family Hotels)*, Chap. 11 Case No. 10-62543, Adv. No. 10-06112, slip op. at 5-6 (Bankr. W.D. Va. Oct. 1, 2010).[6] The Bankruptcy Court's conclusion that the Georgia Action is non-core is supported

---

to be broadly interpreted." *Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396, 403 (4th Cir. 1992) (quotations omitted). Here, the three adversary proceedings are all related to the Chapter 11 case because the outcome of the contract and tort claims will have a significant effect on the condition of the estate being administered in bankruptcy.
[6] On the other hand, the Bankruptcy Court observed that Lender, Developer, and General Contractor may file proofs of claim in the Chapter 11 case, which could render the Georgia Action core. *Id.* at 6-7. Because no proofs of claim have been filed, I need not address that aspect of the Bankruptcy Court's decision.

by the facts. The suit involves questions of state contract and tort law, and it was brought in state court, before the Chapter 11 petition was filed, and litigated in state court until removed and transferred to the Bankruptcy Court. The Virginia Lead Action and the Virginia Lien Action are similar to the Georgia Action in these respects, so the Bankruptcy Court would also likely determine that they are non-core proceedings.[7] In the usual circumstance, it would be more efficient for this Court to hear those actions, rather than review the Bankruptcy Court's decisions on those actions de novo. In this instance, however, I cannot ignore that if I choose not to withdraw the reference, the Georgia Action will be remanded and tried or resolved on summary judgment by the Georgia State Court, not by the Bankruptcy Court, so no duplication of effort would occur with respect to that proceeding. Furthermore, the judgment in the Georgia Action would likely resolve the Virginia Lead Action through the operation of preclusion, thereby obviating any need for substantial resources to be expended by both the Bankruptcy Court and this Court to resolve the Virginia Lead Action. The Georgia Action and the Virginia Lead Action involve essentially the same parties and claims, and the Georgia Action is set to be tried in March 2011, well before the Virginia Lead Action would go forward. Assuming *arguendo* that Owners are correct that a final judgment entered by the Georgia State Court does not have preclusive effect until resolution of any appeal of that judgment (Owners' Reply 4-5), I see no reason why the Virginia Lead Action cannot be held in abeyance until an appeal, if any, is resolved. The parties have represented that trial in the Virginia Lead Action would not take place for some time, given the Bankruptcy Court's current docket. In fact, the Bankruptcy Court has taken under advisement a motion to consolidate the Virginia Lead Action with the Virginia

---

[7] Lender states that all of the primary parties in the Virginia Lien Action have consented to entry of final orders or judgment by the Bankruptcy Court (Lender's Resp. 12), but does not direct the Court to any part of the record to support that assertion. Because Owners explicitly state that they do not consent to the Bankruptcy Court's entry of final orders in non-core matters (Owners' Mot. Withdraw Reference 36), I must respect that statement in the absence of any showing of consent.

Lien Action until resolution of the Georgia Action in Georgia State Court, which indicates that the Virginia Lead Action will not be advanced in the meantime. In sum, only the Virginia Lien Action, which the Bankruptcy Court would likely determine to be non-core, stands to waste judicial and party resources by reason of this Court's de novo review of any Bankruptcy Court determination in that matter. The first factor does not provide cause for withdrawing the reference of the Georgia Action and the Virginia Lead Action because those proceedings will probably not require duplicative review by this Court.

The second factor (ensuring the uniform administration of bankruptcy proceedings), the third factor (expediting the bankruptcy process and promoting judicial economy), and the fourth factor (the efficient use of debtors' and creditors' resources) favor declining to withdraw the reference with respect to the bankruptcy actions. Owners' Motion to Withdraw the Reference is predicated on having one speedy trial of the consolidated actions in this Court. But trial in this Court would not be as speedy as Owners hope. Upon a review of the Court's calendar, the Court does not have three weeks for trial of the consolidated actions free until August 2011, and even with some manipulation of the schedule, could not entertain the trial until at least late May 2011. In contrast, trial of the Georgia Action is scheduled for March 2011 in Georgia State Court, and that court is due to hear motions on summary judgment this month. As I explained above, a judgment in the Georgia Action will likely eliminate the need for a trial of the Virginia Lead Action. The Chapter 11 bankruptcy proceeding depends on resolution of the contract and tort claims in those actions. Given these circumstances, the bankruptcy process will be expedited by declining to withdraw the reference of the Georgia Action and the Virginia Lead Action, which would allow the Georgia Action to proceed rapidly to trial and would entail little or no waste of resources.

Even if I decided to withdraw the reference of the three proceedings, consolidation of the proceedings in this Court would not be warranted. While consolidation of the Georgia Action with the Virginia Lead Action would make sense because they involve similar claims and parties, consolidation of those actions with the Virginia Lien Action would not be appropriate for several reasons. First, the breach of contract claim in the Virginia Lien Action pertains to the alleged breach of an agreement between General Contractor and Debtor, whereas the breach of contract claim in the other two actions relates to the alleged breach of a loan agreement between Lender and Owners. The legal theories for the alleged breaches and many of the facts required to prove those theories appear to be different. The Georgia Action and Virginia Lead Action also involve a claim of fraudulent inducement that has not been brought in the Virginia Lien Action.[8] Therefore, trying the various claims alleged in the three proceedings in one action would not significantly improve efficiency. Second, the only parties that are involved in both the Virginia Lien Action and the other two actions are Debtor and Lender, and Lender claims its role as a holder of a lien in that action is nominal. Consequently, as a practical matter, consolidation would force parties to the Virginia Lien Action that have only tangential interest in the other two actions (*e.g.*, General Contractor, subcontractors) to attend trial on matters largely unrelated to them, and vice versa with regard to the parties to the other actions (*e.g.*, Developer, Danielson). Rather than resulting in significant savings of time or expenses, *see Arroyo*, 90 F.R.D. at 606, consolidation of all three actions has the potential to increase parties' time and expenses, with only slight to moderate benefit to judicial economy. At its root, efficiency derives from common

---

[8] Owners maintain that the Virginia Lien Action raises issues of General Contractor colluding and conspiring with Lender, Developer, and Danielson, which overlap with similar questions in the other two actions. (Owners' Reply 5-6.) Owners, however, only stated one counterclaim in the Virginia Lien Action, which was for breach of contract. (Ex. 10 to Owners' Mot. Withdraw Reference, 14-15.) The allegations in the counterclaim that General Contractor made misrepresentations to Owners do not encompass a wider conspiracy among Lender, Developer, and Danielson; in fact, one of the allegations is that General Contractor misled Developer as well as Owners. (*See id.*, 11, ¶ 42.)

9

issues of fact and law, of which there are too few among these actions to justify withdrawal of the reference and subsequent consolidation.

The fifth factor relevant to this analysis is whether withdrawal of the reference would reduce forum shopping. Each party accuses the other of forum shopping. (*See* Owners' Mot. Withdraw Reference 34; Lender's Resp. 11; General Contractor's Resp. 5.) Through the course of the litigation, it appears that both parties have, to some extent, sought forums that they believed to be to their advantage. Owners, as the movants in this matter, have failed to meet their burden of demonstrating that reduction in forum shopping is a ground for withdrawal of the reference.

The final factor to consider is whether withdrawal would preserve the right to a jury trial. The Bankruptcy Court is unable to conduct a jury trial unless specially designated by this Court and granted the express consent of all the parties. 28 U.S.C. § 157(e). With respect to the Georgia Action, if the reference is not withdrawn, Owners would have the right to a jury trial in Georgia State Court, which does not support withdrawing the reference. The Virginia Lead Action would likely be resolved on preclusion grounds by the judgment in the Georgia Action, so that action would probably not go to trial. It is only the Virginia Lien Action in which allowing the withdrawal of reference would also promote Owners' constitutional right to a jury trial on the state law claims, assuming those claims are not dismissed or ruled on as a matter of law.

None of the factors favor withdrawing the reference of the Georgia Action and the Virginia Lead Action. Moreover, the three adversary proceedings are not suited for consolidation because of differences in questions of law and fact. Although some of the factors would support withdrawing the reference of the Virginia Lien Action, the purpose of Owners'

motion is to have one speedy trial of the consolidated actions in this Court, for which Owners have not met the burden of setting forth sufficient "cause" for discretionary withdrawal.[9]

### IV. CONCLUSION

For the reasons stated herein, the Motion to Withdraw the Reference is denied, and this miscellaneous case is to be stricken from the docket.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered this 10th day of December, 2010.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] At no point in the briefing or argument did Owners request this Court to withdraw the reference in the Virginia Lien Action independent of the Virginia Lead Action, or otherwise indicate that such a course of action would be wise or preferable.